434 A.2d 838

**COMMONWEALTH of Pennsylvania,**

v.

**Barry BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted June 13, 1981.

Filed Sept. 11, 1981.

Roy H. Davis, Assistant Public Defender, Media, for appellant.

Frank T. Hazel, District Attorney, Media, for Commonwealth, appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

CAVANAUGH, Judge:

Barry Brown, the appellant, was convicted by a jury on charges of robbery, rape, unlawful restraint, indecent assault, theft by unlawful taking, theft by receiving stolen property and criminal conspiracy. He was acquitted of a charge of kidnapping. Motions for a new trial and in arrest of judgment were denied. Concurrent sentences of two-

and-a-half to ten years were imposed for rape and robbery. Sentence was suspended as to the remaining convictions.

## I

Appellant's first contention is that the evidence was insufficient to support the verdicts. The evidence, viewed in the light most favorable to the Commonwealth, the verdict winner,[1] disclosed that on March 2, 1978, the victim a twenty-nine year old widow, while driving in Philadelphia, stopped at a traffic light. Another car driven by appellant's co-defendant, Stephen Jones, stopped in the adjoining lane. With Jones were appellant who sat on the passenger side in front, and two other male passengers in the back seat. The four men tried to attract the victim's attention by blowing the horn, screaming, and attempting to force her car off the road. Some four blocks further on, at another traffic light, the victim opened her door and yelled a racial epithet at the four men. Appellant went to her car, pulled her out, and pushed her into the Jones' vehicle. She asked to, but was not allowed to leave, Jones placing a hand on her thigh and Jones placed his arm around her neck.

Jones drove around for some ten to fifteen minutes, during which time the men and the victim were talking and smoking "angel dust". The victim testified that she spoke and smoked so as to appear not to be afraid. She also offered Jones or Brown some "angel dust" of her own in the hope of making them less alert. The back seat passengers were dropped off. As the Jones' car continued the victim kicked the windshield and screamed so as to attract two police officers standing in front of a diner. Jones and appellant grabbed her legs. Eventually the car arrived at a motel in Tinicum Township. Jones opened the door to a motel room with a key. Appellant pulled the victim from the car and pushed her into the motel room. As soon as she entered the room, she noticed what she believed to be a pool of blood in the middle of the sheet on the first bed. The

1. *Commonwealth v. Madison*, 263 Pa.Super. 206, 397 A.2d 818 (1979).

victim thought she was going to be killed because appellant had told her Jones had a gun.

Appellant began talking on the telephone. Jones sat on a bed. The victim left her seat by the door but was restrained from leaving by both men. Appellant began to touch her privates while Jones rubbed her buttocks. She was pushed on to the bed. Jones took off her boots while Brown started to rip off her clothes. She pulled appellant closer to her and suggested he get rid of Jones and that she would have intercourse with appellant if he kept Jones away from her, in the belief that it would be easier for her, and possibly avoid the entire incident by acting agreeably and concealing her fear. Jones left.

Appellant again started to tear at the victim's clothes. To stall for time and avoid her clothes being torn off, she suggested that she remove her own clothes and did take off her outer garments.

At that point, Jones banged on the door, screaming that he wanted to enter. Appellant told him to come back in fifteen minutes. Jones left again. At the request of the victim, appellant secured the chain lock and also placed a chair in front of the door, so as to keep Jones out, she being very afraid of Jones. Thereafter, appellant pulled off her undergarments, pushed her onto the bed and while holding her down with his body, forcibly had intercourse with her.

When appellant had finished, Jones returned. Appellant or Jones then took her handbag from the floor and went into the bathroom with it. When the men walked to the rear of the room, the victim ran out screaming wrapped in a bedspread through the parking lot to the motel office where she reported to the desk clerk that she had just been raped. The desk clerk testified that the victim was hysterical, very upset, and crying very badly. The police were called.

The handbag was found the next day in a park in Chester, Pennsylvania but the victim's identification, checks, two credit cards and cash in the amount of $2,275 were missing.

The defendants presented evidence that the victim had acted of her own free will throughout. As to the handbag, Jones testified that while they were driving to Chester, he saw the handbag slide out from under the car seat and suggested to appellant that it be thrown out the window which appellant allegedly did.

Appellant, by brief here, while acknowledging that the issue of guilt is basically one of fact, urges that the victim's version was so illogical and improbable as to be insufficient to establish appellant's guilt as to rape beyond a reasonable doubt. We do not agree. There was that in the victim's testimony which could arguably point to her consent. Nevertheless, her testimony was a logical recount of the desperate stratagems of a lone female in peril from the time when Jones first attempted to force her car off the road. Moreover, her testimony as to absence of consent on her part was corroborated by the desk clerk. The jury obviously resolved the credibility of the witnesses in favor to the victim. *Commonwealth v. Brown*, 228 Pa.Super. 166, 232 A.2d 281 (1974). As to robbery, we agree with the court below that "the victim's testimony revealed that she was being threatened and that she was in fear of imminent serious bodily injury, which atmosphere prevailed up until the time the victim ran out of the motel room leaving her handbag in the possession of the defendants"; that there was sufficient evidence for the jury to conclude that appellant committed a theft; and in the course of committing that theft he, in the language of 18 Pa.C.S.A. § 3701(a)(1)(iv) threatened the victim with or intentionally put her in fear of immediate bodily injury. Again, the jury resolved the credibility of the witnesses in favor of the Commonwealth and disbelieved the defendants in this regard.

## II

Appellant argues that the convictions for theft by unlawful taking and theft by receiving stolen property merge into robbery and that the conviction for indecent assault merges into the conviction for rape and that no

sentence may be imposed on the lesser included crimes. The Commonwealth acknowledges the validity of this argument. We will, therefore, vacate the suspended sentences for indecent assault, theft by unlawful taking or deposition and theft by receiving stolen property. *Commonwealth v. Turner*, 265 Pa.Super. 486, 402 A.2d 542 (1979); *Commonwealth v. Richardson*, 232 Pa.Super. 123, 334 A.2d 700 (1975).

■ Lastly, appellant attacks the suspended sentences which were given on the charges of conspiracy and unlawful restraint as illegal. Appellant simply cites the sentencing alternatives under the Sentencing Code (42 Pa.C.S.A. § 9721) which include:

(1) An order of probation.

(2) A determination of guilty without further penalty.

(3) Partial confinement.

(4) Total confinement.

(5) A fine.

Since a "suspended sentence" is not among these alternatives it is argued such a disposition is illegal. The Commonwealth in its brief does not specifically address this argument concerning the conspiracy and unlawful restraint sentences, but in its argument relative to the suspended sentences for the merged offenses argues that courts still retain the power to "indefinitely suspend sentence". Although the record discloses that on September 5, 1979, the defendant appeared before the court for reconsideration of sentence, we have no indication that the legality of the various suspended sentences was considered at that time. We recognize that our cases demonstrate that the legality of sentence may be raised on direct appeal for the first time. *Commonwealth v. Turner, supra*; or even addressed by the court sua sponte; *Commonwealth v. Betoni*, 254 Pa.Super. 26, 385 A.2d 506 (1978). We are also cognizant that Pennsylvania sentencing practices have used the term suspended sentence in a number of ways. There were those cases where the court suspended the imposition of sentence and placed the defendant on probation under the Act of May 7,

1925, P.L. 554, § 1, as amended, 19 P.S. § 1051 (now repealed). *See Commonwealth v. Colding,* 482 Pa. 112, 393 A.2d 404 (1978); *Commonwealth v. Cole,* 222 Pa.Super. 229, 294 A.2d 824 (1972). In another case our court has interpreted a suspended sentence to mean that a sentence of probation was, in fact, intended under the Sentencing Code of 1972. *Commonwealth v. Harrison,* 264 Pa.Super. 62, 398 A.2d 1057 (1979). In *Commonwealth v. Duff,* 414 Pa. 471, 200 A.2d 773 (1964), the Supreme Court recognized the long standing practice in Pennsylvania trial courts of "suspending sentence" without providing for a period of probation. In the *Duff* case the court concluded that the practice had no basis in law and should be discontinued. Finally, moreover, there are undoubtedly those instances where the trial court suspends sentence meaning that it is its intention to give no sentence. This latter alternative would seem to be covered presently by the Sentencing Code alternative of determination of guilt without penalty. However, this interpretation might not be valid since we do not know if the trial judge's intention was to *not sentence* as opposed to *sentence* of *no further penalty.* Therefore, we remand this case since although we might reasonably deduce the trial judge's intention, we do not think it appropriate for us to do so on an issue which might have far reaching implications with respect to the legality of sentencing practices in Pennsylvania.

We have decided that the suspended sentences for the merged offenses must be vacated since that is what was done in *Commonwealth v. Richardson, supra.* Touching upon the legality of the suspended sentence issue, however, is the problem pointed out by the Commonwealth in its brief in a situation where, unlike here, the conviction for the more serious offense is set aside on appeal and the Commonwealth must fall back on the sentence of a lesser included offense and in such cases the trial courts are in a dilemma since they may be well aware of the merger and therefore of the illegality of giving sentences for the lesser offense but at the same time may want to make a disposition which would allow a reasonable degree of flexibility in sentencing should

the more serious crime be set aside. Although our disposition does not reach this issue, it is some evidence that the suspension of sentence may have some role to play under Pennsylvania sentencing practices. Whether, in fact the suspended sentence in any form has any viability, we do not think it prudent to decide on the state of the record.

Judgments of sentence for rape and robbery affirmed; judgments of sentence for theft by unlawful taking and theft by receiving stolen property and indecent assault vacated. Case remanded to permit appellant, if he so desires, to move for clarification of the judgments of sentence for conspiracy and unlawful restraint. A new appeal may be taken from any such order which may be entered.